UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID D.,<br>        Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>        Defendant. | Case No. 20-cv-02696-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 16 |

Plaintiff seeks social security benefits for a combination of physical impairments, including: back pain, neck pain, and numbness and weakness in his extremities. (Administrative Record ("AR") 65-72, 246, 277, 283, 321.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his benefits claim. Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[1] (Dkt. Nos. 15 and 16.) After careful consideration of the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), and the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ erred in her medical equivalence finding, her adverse credibility finding of Plaintiff, and her weighing of the medical opinion testimony, but there are outstanding issues to be resolved before a disability determination can be made, remand for further proceedings is proper.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3 and 10.)

United States District Court
Northern District of California

# BACKGROUND

## A. Procedural History

Plaintiff filed an application for disability benefits under Title II of the Social Security Act (the "Act") on April 12, 2016, alleging a disability onset of March 8, 2013. (AR 85-86, 97, 223-24.) His application was denied both initially and upon reconsideration. (AR 135-39, 143-48.) Plaintiff then submitted a request for a hearing before an Administrative Law Judge ("ALJ") and his hearing was held before Judge Mary Parnow on September 11, 2018. (AR 48-84, 153-54.) On April 12, 2019, the ALJ issued a decision finding Plaintiff is not disabled. (AR 12-36.) The ALJ found that Plaintiff has a severe impairment of degenerative disc disease of the cervical and lumbar spine with lumbar radiculopathy, but that he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 18-20.) The ALJ then determined that Plaintiff has the residual functional capacity ("RFC") for less than the full range of sedentary work. (AR 20.) The ALJ concluded that Plaintiff is not disabled because he can perform jobs existing in significant numbers in the national economy. (AR 30-31.)

Plaintiff then filed a request for a review of the ALJ's decision, which the Appeals Council denied. (AR 1-6, 221-22.) Plaintiff then sought review in this court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 15 and 16.)

## B. Issues for Review

1. Is the ALJ's medical equivalence finding supported by substantial evidence?
2. Did the ALJ err in evaluating Plaintiff's credibility?
3. Did the ALJ err in evaluating the medical opinion evidence?
4. Is the ALJ's RFC finding supported by substantial evidence?
5. Should the Court remand for payment of benefits or further proceedings?

# LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," ("RFC") the claimant can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 404.1520(a).

## DISCUSSION

### A. The ALJ's Medical Equivalence Determination

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R § 404.1520(d); *Tackett*, 180 F.3d at 1098. "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). Plaintiff bears the burden of proving that he satisfied the listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff argues that the ALJ erred in evaluating medical equivalence—also known as the listings—because the ALJ failed to analyze whether Plaintiff's degenerative disc disease of the cervical and lumbar spine with lumbar radiculopathy met or equaled Listing 1.04(A) for disorders

of the spine. In fact, the ALJ did not analyze *any* of the listings specifically, saying only that "[t]he evidence does not establish that the claimant's impairments, individually or in combination, meet or equal in severity any listed impairment(s). A more detailed discussion of the evidence is embodied in the residual functional capacity analysis in Finding 5." (AR 20.) But Finding 5 does not discuss whether Plaintiff's impairments meet or medically equal the requirements of Listing 1.04(A). (*See* AR 20-30.)

Listing 1.04(A) requires, among other things, motor loss (atrophy with associated muscle weakness or muscle weakness) and, when the lower back is involved, positive straight-leg raising tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04(A). Finding 5 of the ALJ's decision describes equivocal findings on Plaintiff's straight-leg raising tests and motor loss and does not resolve those ambiguities or determine whether those ambiguous findings are or are not sufficient to meet or medically equal the requirements of Listing 1.04(A). (*See* AR 30 ("[T]he objective medical evidence . . . demonstrates some ongoing weakness in the upper and lower extremities . . . [and] equivocal straight leg raise testing.").  Therefore neither the bare statement that Plaintiff does not meet any of the listings, nor the description of the medical evidence in Finding 5, is sufficient to meet the ALJ's burden to evaluate whether Plaintiff's impairments meet or medically equal the requirements of Listing 1.04(A). *See Laborin v. Berryhill*, 692 F. App'x 959, 962 (9th Cir. 2017) (internal citations omitted) ("A bare statement that Laborin does not meet a listing, without appropriate evaluation or discussion of the medical evidence, is insufficient to conclude that Laborin's impairment does not meet or medically equal a listed condition."); *Lewis*, 236 F.3d at 512 (internal citations omitted) ("An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.").

The Commissioner's brief does not offer any reason why the ALJ would be excused from analyzing the relevant evidence, resolving the ambiguities therein, and determining whether Plaintiff's impairments meet or equal the requirements of Listing 1.04(A). Instead, the Commissioner simply provides his own interpretation of the ambiguous evidence that he believes supports finding that Plaintiff does not meet Listing 1.04(A). The Court reviews, and defers to, the ALJ's interpretation of ambiguous evidence, not the Commissioner's post-hoc interpretations.

4

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

### B. The ALJ's Determination of Plaintiff's Credibility

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal citations and quotation marks omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citations omitted).

Here, applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 21.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of his symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. The ALJ found no evidence of malingering, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 21.) The ALJ provided two reasons for this conclusion: (1) Plaintiff showed gradual improvement in his pain level and functional abilities with treatment and (2) Plaintiff's treatment was conservative in nature. (AR 21, 26, 28.) Neither of these reasons is "specific, clear and convincing."

First, the ALJ's conclusion that Plaintiff showed gradual improvement over time in his pain level and functional abilities is contradicted by the record. Starting with Plaintiff's pain, far from showing gradual improvement over time, what the record actually shows is that on numerous occasions over the course of almost five years Plaintiff consistently reported to his medical providers that he experienced pain in his neck and lower back that was at least an eight out of 10 in terms of intensity. At times that pain decreased temporarily, but it always returned to the eight out of 10 level. (*See* AR 381 (August 2013: 7-8/10), 335 (October 2013: 8/10), 362 (June 2014: 7/10), 354 (July 2014: 7-7.5/10); 508 (August 2014: 9/10), 496 (December 2014: 8/10), 488 (January 2015: 8/10), 474 (July 2015: 7-8/10), 470 (October 2015: 7/10 without medication), 466 (December 2015: 7-8/10 without medication), 460 (February 2016: 8/10 with medication), 447 (March 2016: 8/10 with medication, down to 6/10 with use of heating pad), 442 (April 2016: 8/10 with medication), 747 (September 2016: 8-9/10), 739 (October 2016: 8-9/10), 729 (December 2016: 8-9/10), 714 (January 2017: 7/10), 704 (May 2017: 7/10), 693 (June 2017: 8-9/10), 686 (August 2017: 8-9/10), 678 (October 2017: 8/10), 607 (November 2017: 8-9/10), 593 (December 2017: 8/10), 574 (January 2018: 8/10), 560 (February 2018: 7/10, down to 5/10 with use of heating pad), 539 (March 2018: 8/10).) Plaintiff consistently reported that the medications and other treatments he received helped his pain, (AR 335, 362, 485, 470, 747, 693, 607, 593, 577, 561), but that his rating of eight out of 10 pain was taking those medications and treatments into account. (AR 460, 447, 442). Plaintiff also consistently reported that resting and lying down helped decrease his pain (in addition to his various treatments), and that increased activity increased his pain. (AR 474, 470, 457, 747.) These reports in no way undermine Plaintiff's symptom testimony, which candidly acknowledged that his medications and other treatments helped his symptoms but that he still experienced significant pain and still had to lie down a significant portion of the day. (AR 65-74.)

The ALJ's finding that Plaintiff's functional abilities have gradually improved over time rests on cherry-picked examples of temporary small improvements and ignores other examples of temporary worsening and the overall severity of Plaintiff's decreased functionality. (*Compare* AR 611 ("Continue H wave- helping significantly with . . . increased function. Patient is able to walk

further."), 581 ("Topical medications . . . Improves: ADLs/Functionaity [sic]"), 561 ("Reports with heating pad, able to more easily move to do household tasks."), *with* AR 704 ("[H]is daily function is worsening."), 696 ("The patient has significant loss of ability to function independently resulting from the chronic pain."), 662 ("This patient has significant functional losses including activities of daily living."), 574 ("[H]is back is slightly worse as it locked up last night and he could not sleep.").) The ALJ also ignored the doctors' own descriptions of Plaintiff's treatment history, which do not characterize Plaintiff's pain or functionality as having significantly improved over time. (*See* AR 467 ("Request updated MRI spine due to increase and chronic [symptoms] despite conservative measures."), 454 ("Request updated EMG/NCS UE bilat due to increase symptoms and new MRI finding."), 696 ("Patient has tried PT, chiro, medications, acupuncture without significant clinical improvement.").) This cherry-picked evidence of some functional improvements at certain times does not rise to the level of a specific, clear, and convincing reason to discount any part of Plaintiff's testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("We conclude that the ALJ's specific reason for rejecting Dr. Hsieh's medical opinion is not supported by substantial evidence. In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment."); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (internal citations omitted) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

Second, the ALJ's reasoning that Plaintiff's treatment was "essentially conservative in nature" (AR 21), is equally unconvincing. The ALJ cited that Plaintiff was not found to be a surgical candidate and that Plaintiff had declined epidural steroid injections as evidence of Plaintiff's conservative treatment and therefore a basis for discounting Plaintiff's testimony. (AR 21.) However, before discounting a claimant's symptom testimony on the basis of treatments not pursued by the claimant, an ALJ is required to analyze the reasons given for not pursuing the treatments. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (internal citations and quotation

marks omitted) ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."); Social Security Ruling 16-3p, 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record [based on lack of treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). Here, Plaintiff offered explanations for both of the treatment decisions on which the ALJ relied. He testified that the doctors told him he was not a candidate for surgery because of his age, (AR 66), and the medical records show that Plaintiff declined epidural steroid injections because he was afraid of suffering permanent neurological damage, (AR 627.) The ALJ did not discuss whether either of these reasons justified Plaintiff's decision to pursue "conservative" treatment. (*See* AR 21.) Having failed to address the reasons Plaintiff gave for not having undergone surgery or epidural injections, the ALJ erred in relying on those treatment decisions to discount Plaintiff's testimony. *See Orn*, 495 F.3d at 638; Social Security Ruling 16-3p, 2017 WL 5180304, at *9. Therefore, neither of the reasons given by the ALJ for discounting Plaintiff's testimony meet the specific, clear, and convincing standard, and the ALJ's rejection of Plaintiff's testimony was in error.[2]

**C.   The ALJ's Consideration of Medical Opinion Evidence**

In the Ninth Circuit, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as

---

[2] In his brief, the Commissioner offers additional reasons he believes justify discounting Plaintiff's symptom testimony. However, the Court reviews only the reasons actually given by the ALJ, not post-hoc rationalizations offered by the Commissioner. *Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ— not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Accordingly, the Court does not address the Commissioner's additional arguments.

amended (Apr. 9, 1996)). A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn*, 495 F.3d at 631. If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal citations omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31 (internal citations omitted).

Plaintiff challenges the weight the ALJ gave to the following medical opinions: (1) the workers' compensation evaluations performed by Plaintiff's treating medical providers from June 2014 to January 2017; (2) the opinions of the consultative examiner, Dr. Pon; (3) the hearing testimony of the non-examining medical expert, Dr. Urbaniak; and (4) the September 2018 opinions of Plaintiff's treating physician, Dr. Yoshida.

### 1. Workers' Compensation Evaluations

From June 2014 to January 2017, Plaintiff received numerous evaluations of his ability to work from his treating medical providers in connection with his workers' compensation case. (AR 363, 355, 510, 499, 489, 486, 475, 439, 745, 712.)[3] The ALJ gave these evaluations "some limited weight" because she found that they were temporary in nature and addressed towards determining Plaintiff's current ability to perform his current job and therefore did not speak to Plaintiff's long-term functional capacity. (AR 25-27.) This is a sufficient reason to discount the weight given to

---

[3] Plaintiff's motion also cites to AR 405-07, but the opinion located there is not an opinion from a treating medical provider between June 2014 and January 2017, as Plaintiff's motion indicates. AR 405-07 contains a February 2014 Quantitative Functional Capacity Evaluation by what appears to be a medical provider that did not treat Plaintiff. The ALJ gave separate weight and separate reasons for discounting this opinion, (AR 26), which Plaintiff's motion does not address. Accordingly, and in light of the Court's determination to remand on other grounds, the Court will not interpret Plaintiff's motion to challenge this separate finding by the ALJ, and will address only the opinions from treating medical providers between June 2014 and January 2017.

9

these opinions.[4] Many of the opinions specifically state that they only apply to a specific time period, and many of the limitations in the opinions changed over time, which supports the ALJ's decision to discount the opinions. Plaintiff argues that the opinions consistently found either that Plaintiff was unable to work a full eight-hour day or that Plaintiff needed stretch breaks every hour, but the opinions are not consistent on these points. Some of the opinions (including the most recent ones) do not contain a limitation on Plaintiff's ability to work a full eight-hour day, (AR 439, 745, 712), and the opinions differ on the length of the stretch break required, (*Compare* AR 363, 355, 510, 499, 489, 486, 475 (10 to 15 minute stretch break every hour), *with* AR 439, 745, 712 (five minute stretch break every hour).) These changes over time highlight that these opinions were intended to be temporary, and the ALJ was therefore justified in discounting the weight to give them in determining Plaintiff's long-term functional capacity.

### 2. Dr. Pon

Plaintiff was examined by a consultative examiner, Dr. Pon, on August 22, 2018. (AR 753-62.) The ALJ gave Dr. Pon's opinion "substantial" weight and largely incorporated the limitations assessed by Dr. Pon into Plaintiff's RFC. (AR 20, 28, 756-62.) The ALJ did not, however, appear to incorporate Dr. Pon's finding that Plaintiff was unable to climb a few steps or walk a block at a reasonable pace, and was only able to do so at a slow pace. (AR 20, 762.) Plaintiff argues this pace limitation is an additional limitation beyond the limitation on the amount of time Plaintiff can spend walking or climbing. The Court agrees. Having given Dr. Pon's opinion substantial weight, and having not given any reason to discount any part of it, the ALJ was

---

[4] The opinions that Plaintiff claims were improperly discounted—whether Plaintiff can work a full eight-hour day and whether Plaintiff needs hourly stretch breaks—are contradicted by other opinions in the record, including the opinion of the consultative examiner, Dr. Pon, who did not put limitations on Plaintiff's ability to work a full day or indicate a need for an hourly stretch break. (*See* AR 756-62.) Normally this would mean the ALJ's rejection of these opinions would be evaluated under the "specific and legitimate" standard. *Lester*, 81 F.3d at 830. However, some of the opinions at issue were offered by medical professionals that, under the regulations in effect at the relevant time, were not considered "acceptable medical sources," and therefore the rejection of their opinions is evaluated under the more deferential "germane reasons" standard. 20 C.F.R. §§ 404.1502(a), 404.1527(f); *see also Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam) (internal citations omitted). The ALJ's reasons suffice under either standard.

required to either incorporate the slow walking and climbing pace limitation into the RFC or provide reasons for failing to do so.

In responding to this argument, the Commissioner appears to argue that the ALJ was not required to incorporate any pace limitation in the RFC because Dr. Pon did not define what a "slow pace" or "reasonable pace" meant, and the ALJ incorporated the "concrete" limitation regarding the amount of time Plaintiff could spend climbing.[5] The Court disagrees; Dr. Pon's walking and climbing pace limitation is meaningful and should have been incorporated into the RFC or addressed with reasons given for rejecting it. Moreover, Dr. Pon's opinion about Plaintiff's ability to walk and climb at a "reasonable" pace was on a form created by the Social Security Administration, which specifically asked about Plaintiff's ability to walk and climb at a reasonable pace in addition to asking about the amount of time Plaintiff could spend doing each task. (*See* AR 757-62.) If the Administration's position is that a determination that a claimant cannot walk or climb at a reasonable pace is either uselessly vague or redundant, then the Administration should not include such questions on its forms.[6]

### 3. Dr. Urbaniak

Non-examining medical expert Dr. Urbaniak testified at Plaintiff's hearing and concluded that Plaintiff could perform sedentary work. (AR 61.) When the ALJ asked Dr. Urbaniak if he agreed with Dr. Pon's narrative description of Plaintiff's functional capacity, Dr. Urbaniak said yes. (AR 61, 756.) When Plaintiff's attorney asked Dr. Urbaniak if he agreed with the sitting, standing, and walking limitations Dr. Pon had assessed in the check-box form portion of his opinion, Dr. Urbaniak said he was "at a great disadvantage" as compared to Dr. Pon, because this was a "statement that the individual gives to the doctor" and so Dr. Urbaniak had no reason to agree or disagree with it. (AR 63, 758.) The ALJ gave Dr. Urbaniak's opinion "the most weight" because she found that it was consistent with the objective evidence of record and Plaintiff's

---

[5] The Commissioner does not address Dr. Pon's walking pace limitation.
[6] The Commissioner also argues that any error with regard to the climbing pace limitation is harmless because the jobs identified by the ALJ do not require climbing. The Court need not reach this argument since Dr. Pon also limited Plaintiff's walking pace and the Commissioner does not argue that the jobs identified by the ALJ do not require any walking.

11

documented improvement with conservative care and because Dr. Urbaniak had reviewed almost the entire medical record and was present at the hearing and subject to questioning by Plaintiff's attorney. (AR 29.)

Neither of the ALJ's stated reasons justifies giving more weight to the opinion of Dr. Urbaniak, who did not examine Plaintiff, than the opinion of Dr. Pon, who did examine Plaintiff. *See Orn*, 495 F.3d at 631 (internal citation omitted) ("Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians."). The first reason given by the ALJ—that Dr. Urbaniak's opinion was consistent with the objective medical evidence and treatment record—the ALJ also gave for giving Dr. Pon's opinion "substantial weight." (AR 28-29.) The ALJ did not specify any ways in which Dr. Urbaniak's opinion was more consistent with the objective medical evidence and treatment record than Dr. Pon's opinion. The objective medical evidence and treatment record is therefore no basis for giving Dr. Urbaniak's opinion more weight than Dr. Pon's.

Nor does Dr. Urbaniak having reviewed almost the entire record and being present at the hearing warrant more weight for his opinion than Dr. Pon's opinion. The last item in the medical record reviewed by Dr. Urbaniak was Dr. Pon's report, and Dr. Pon reviewed medical records as well, so there is no reason to believe that Dr. Pon did not have access to all the same records Dr. Urbaniak had access to. (*See* AR 58 (Dr. Urbaniak was given exhibits 1F through 9F), 61 (9F is Dr. Pon's consultative examination report), 753 (Dr. Pon reviewed medical records as well).) As for the fact that Dr. Urbaniak was present at the hearing and available for questioning by Plaintiff's attorney, neither the ALJ nor the Commissioner cites any authority providing this as a basis for upsetting the normal weight given to examining and non-examining physicians. Dr. Urbaniak did not listen to any hearing testimony prior to giving his opinion, (AR 56-57), and the questioning of Dr. Urbaniak by Plaintiff's attorney, (AR 62-63), in which Dr. Urbaniak explicitly stated he was at a great disadvantage as compared to Dr. Pon and then made inaccurate statements about Dr. Pon's report, (AR 758), does nothing to boost the persuasiveness of Dr. Urbaniak's opinion over Dr. Pon's opinion.

12

### 4. Dr. Yoshida

Dr. Yoshida was Plaintiff's primary care physician beginning in November 2017 and completed a medical source statement regarding Plaintiff's functional abilities on September 17, 2018. (AR 599-604, 776-79.) The ALJ gave the opinions in this medical source statement little weight because she found that: (1) the treatment notes and clinical findings in the record do not support the drastic limitations set forth in the medical source statement, especially the walking, postural, and manipulative limitations, because Plaintiff received conservative treatment and did not need to use "severe pain medications" regularly; (2) the treatment notes in the record do not support Dr. Yoshida's statement concerning medication side effects; (3) Dr. Yoshida's statements about Plaintiff's ability to walk and need to walk throughout the day are internally consistent and not consistent with the record; and (4) Dr. Yoshida opined that Plaintiff had the limitations discussed in his opinion beginning November 22, 2017, but the record does not document a significant change in the severity of Plaintiff's impairments at that time. (AR 29-30.)

Plaintiff concedes that Dr. Yoshida's opinions regarding Plaintiff's ability to walk and need to walk throughout the day, (AR 777), are confusing and Plaintiff does not challenge the ALJ's decision to discount those portions of Dr. Yoshida's opinions. But Plaintiff maintains that the rest of Dr, Yoshida's opinions should not have been rejected, particularly his opinion that Plaintiff could not stand, walk, and sit for more than a total of six hours in a day, (AR 777), and his opinion regarding Plaintiff's ability to hold his neck in certain positions, (AR 778). The Court agrees.

First, the ALJ's claim that the treatment notes and clinical findings in the record do not support Dr. Yoshida's opinions is not sufficiently specific to support discounting Dr. Yoshida's opinions. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (internal citations omitted) (rejecting the ALJ's reliance on "broad and vague" reasons for rejecting treating physician's opinion). Dr. Yoshida's limitations were based on Plaintiff's pain level, diffuse tenderness all over Plaintiff's body, numbness in Plaintiff's arms and legs, and reduced range of motion in Plaintiff's neck and back. (AR 776.) All of these clinical findings appear in the record, and Dr. Yoshida's standing, walking, sitting, postural, and manipulative limitations are logically tied to

13

these symptoms. (AR 547, 638-39, 767, 773, 776-79.) The ALJ does not explain which treatment notes and clinical findings contradict which opinions by Dr. Yoshida, or why. (*See* AR 29-30.) Without this explanation, the ALJ's general reference to the medical record is not a "specific and legitimate reason supported by substantial evidence" to discount Dr. Yoshida's opinion. *Lester*, 81 F.3d at 830 (internal citations and quotation marks omitted).[7] Nor is the ALJ's reference to Plaintiff's "conservative" treatment a specific and legitimate reason to discount Dr. Yoshida's opinions. As discussed above, the ALJ failed to address the reasons Plaintiff gave for not being a surgical candidate and declining epidural steroid injections. And the ALJ's decision does not explain what she means that Plaintiff has not needed to use "severe pain medications regularly," (AR 30), or why that fact contradicts any of Dr. Yoshida's opinions.

The Court also rejects the ALJ's claim that Dr. Yoshida's statements about Plaintiff's medication side effects are not supported by the record. (AR 29.) Dr. Yoshida's medical source statement lists drowsiness, constipation, stomach pain, and nausea as side effects of Plaintiff's medications. (AR 776.) Treatment notes reflect Plaintiff experiencing side effects of "sedation," "constipation," and "G[astro]I[ntestinal] symptoms." (AR 550, 581.) The Court fails to see any inconsistency between the treatment notes and Dr. Yoshida's statement. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as a basis for the rejection of an examining physician's conclusions.").[8]

Plaintiff has conceded that the third reason given by the ALJ, that Dr. Yoshida's statements about Plaintiff's ability to walk and need to walk throughout the day are both internally inconsistent and inconsistent with the record, is a valid basis on which to discount those opinions. Since the parties agree on this point, the Court finds these inconsistencies to be a specific and

---

[7] The Court evaluates the ALJ's rejection of Dr. Yoshida's opinions under the "specific and legitimate reasons" standard since Dr. Yoshida's opinions were contradicted by Dr. Pon, who assessed less severe limitations. (*See* AR 753-62.)
[8] The Commissioner appears to argue that Dr. Yoshida's opinions were not supported by the record because at other visits Plaintiff stated he did not have any side effects from his medication. Dr. Yoshida's reporting of side effects that are present at times in the record but not present at other times is not inconsistent with the record.

14

legitimate reason to discount Dr. Yoshida's opinions about Plaintiff's ability to walk and need to walk throughout the day.

The last reason given by the ALJ for discounting Dr. Yoshida's opinions was that Dr. Yoshida stated that his assessed limitations applied beginning on November 22, 2017, but the ALJ found that the record did not show a significant change in Plaintiff's symptoms at that time. (AR 30.) Dr. Yoshida explained that the reason he chose this date was that was the date on which Plaintiff transferred to Dr. Yoshida's care from another doctor. (AR 779.) The Court agrees with the ALJ that this date should bear no weight in the determination of Plaintiff's limitations, but the ALJ did not explain, and it is not apparent to the Court why Dr. Yoshida's approach to answering this question in any way undermines any of his other opinions. Accordingly, the ALJ provided specific and legitimate reasons to discount Dr. Yoshida's opinions about walking and the onset date but failed to do so in discounting Dr. Yoshida's other opinions.

***

Because the ALJ's medical equivalence finding, adverse credibility finding of Plaintiff, and consideration of the medical evidence are not supported by substantial evidence, the ALJ's decision cannot stand. Given this, the Court need not consider Plaintiff's additional arguments regarding the RFC finding. The ALJ's errors here go to the heart of the disability determination and are not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal citations and quotation marks omitted) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned."); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

D.  **Remand for Benefits or Further Proceedings**

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citations omitted). A remand for an award of benefits is proper however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (internal citations and quotation marks omitted).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred with respect to (1) her medical equivalence determination; (2) her weighing of Plaintiff's symptom testimony; and (3) her weighing of the medical opinion testimony. The second prong of the test has been satisfied, as discussed above, because the ALJ gave legally insufficient reasons for discounting Plaintiff's symptom testimony and portions of the medical opinions of Dr. Pon and Dr. Yoshida. The third prong, however, is not satisfied. It is not clear from the record that the ALJ would be required to find Plaintiff disabled were the evidence properly credited. At the hearing, the vocational expert was not asked any hypotheticals about the improperly discredited opinions of Dr. Pon about walking and climbing pace or Dr. Yoshida about Plaintiff's inability to sit, stand, walk, and hold his neck in certain positions. (*See* AR 75-81, 762, 777-78.) Nor was the vocational expert asked hypotheticals about Plaintiff's testimony regarding how long he can sit and stand and how much time he spends lying down. (AR 67-69, 75-81.) Further proceedings are therefore warranted.

Plaintiff argues that the Court can award benefits either by finding Plaintiff meets Listing 1.04(A) or by crediting Plaintiff's testimony about his need to lie down during the day. As discussed above, there is equivocal evidence in the record about whether Plaintiff meets or medically equals Listing 1.04(A), and the Court is not the appropriate arbiter to resolve that evidentiary issue in the first instance. As for Plaintiff's need to lie down during the day, Plaintiff testified that he lies down 80-90 percent of the day but did not specify whether he would be able to

16

reduce the amount of time spent lying down if he needed to for work.  (*See* AR 67.)  Further proceedings are needed to clarify these issues.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Dkt. Nos. 15 and 16.

**IT IS SO ORDERED.**

Dated: June 17, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge